UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

EVAN WEINER, on behalf of himself and all
others similarly situated,

               Plaintiff,

       v.

SNAPPLE BEVERAGE CORPORATION,

             Defendant.

Civil Action No.:  1:07-cv-08742

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

---

Seth T. Taube (ST 6088)
Maureen P. Reid (MR 2326)
**Baker Botts L.L.P**.
30 Rockefeller Plaza
New York, New York  10112
Tel:    (212) 408-2500
Fax:    (212) 408-2501

Van H. Beckwith (to be admitted *pro hac vice*)
Allyson N. Ho (to be admitted *pro hac vice*)
**Baker Botts L.L.P**.
2001 Ross Avenue
Dallas, Texas  75210
Tel:    (214) 953-6500
Fax:    (214) 953-6503
*Attorneys for Defendant*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................................... ii

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF FACTS ...............................................................................5

       A.    The *Mehta* Putative Nation-Wide Class Action...................................5

       B.    Plaintiff's Putative Nation-Wide Class Action .....................................6

       C.    The Comprehensive Federal Regulatory Scheme for Labeling Food
             and Beverages ......................................................................................7

III.   ARGUMENTS AND AUTHORITIES............................................................10

       A.    Legal Standard Governing Motion to Dismiss ...................................10

       B.    Federal Law Preempts Plaintiff's Claims. .........................................11

             1.    Plaintiff's Claims Are Expressly Preempted by the FFDCA....................11

             2.    Plaintiff's Claims Are Impliedly Preempted Because
                   Congress Has Fully Occupied the Field..................................13

             3.    Plaintiff's Claims Are Obstacles to Important Federal
                   Objectives and Therefore Impliedly Preempted. ...................14

       C.    Plaintiff's Claims Should be Dismissed under the Primary
             Jurisdiction Doctrine...........................................................................17

             1.    The Primary Jurisdiction Factors Weigh in Favor of
                   Dismissing Plaintiff's Claims. ................................................19

             2.    Courts Regularly Apply the Primary Jurisdiction Doctrine
                   to Dismiss Similar Claims. ......................................................21

       D.    Plaintiff's Consumer Fraud Claim Fails for Multiple Additional
             Reasons. ..............................................................................................24

             1.    Plaintiff Has Not Alleged Any Deceptive Act or Practice
                   That Took Place in New York. .................................................25

             2.    Plaintiff Has Not and Cannot Allege That Snapple
                   Committed a Deceptive Act or Practice....................................25

             3.    Plaintiff Has Not and Cannot Allege Any Actual Damages.....................28

             4.    Plaintiff Has Not and Cannot Allege Causality. ......................31

       E.    The Complaint Fails to State a Claim for Unjust Enrichment. .............32

       F.    The Complaint Fails to State a Claim For Breach of Express or
             Implied Warranty. ...............................................................................33

IV.    CONCLUSION................................................................................................35

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
    626 F. Supp. 278 (D. Mass. 1986) ...................................................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. __, 127 S. Ct. 1955 (2007)................................................................10, 30, 32

*Bellevue South Assocs. v. HRH Constr. Corp.*,
    78 N.Y.2d 282 (N.Y. 1991) ...........................................................................................34

*Bernhardt v. Pfizer*,
    Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645
    (S.D.N.Y. Nov. 20, 2000) ..............................................................................................23

*Bernhardt v. Pfizer*,
    Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645
    (S.D.N.Y. Nov. 22, 2000) ..............................................................................................18

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)............................................................................................32

*Buck v. Hampton Tp. School Dist.*,
    452 F.3d 256 (3d Cir. 2006).............................................................................................3

*Buckman v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001).................................................................................................12, 15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).............................................................................................2

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)....................................................................................................9, 11

*Clean Air Markets Group v. Pataki*,
    338 F.3d 82 (2d Cir. 2002).............................................................................................14

*Crigger v. Fahnestock and Co., Inc.*,
    No. 01 Civ. 07819 (JFK), 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003).....................32

*DeRiso v. Synergy USA*,
    6 A.D.3d 152 (1st Dep't 2004)........................................................................................29

*Donahue v. Ferolito, Vultaggio & Sons,*
  13 A.D.3d 77 (1st Dep't 2004)...................................................................28, 29, 30, 33, 35

*EEOC v. Staten Island Sav. Bank,*
  207 F.3d 144 (2d Cir. 2000)................................................................................10

*Ellis v. Tribune Television Co.,*
  443 F.3d 71 (2d Cir. 2006).............................................................................18, 21

*English v. Gen. Elec. Co.,*
  496 U.S. 72 (1990)............................................................................................14

*Far East Conference v. United States,*
  342 U.S. 570 (1952)..........................................................................................19

*Ferracane v. United States,*
  No. 02-CV-1037 (SLT), 2007 WL 316570 (E.D.N.Y. Jan. 30, 2007) ............................35

*Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta,*
  458 U.S. 141 (1982)..........................................................................................13

*Frank v. DaimlerChrysler Corp.,*
  292 A.D.2d 118 (1st Dep't 2002)........................................................................28

*Freightliner Corp. v. Myrick,*
  514 U.S. 280 (1995)..........................................................................................15

*Gaidon v. Guardian Life Ins. Co. of Am.,*
  94 N.Y.2d 330 (N.Y. 1999), *aff'd* 96 N.Y.2d 201 (N.Y. 2001) .........................................25

*Gale v. Int'l Bus. Mach. Corp.,*
  9 A.D.3d 446, 447 (2d Dep't 2004).....................................................................31

*Geier v. American Honda Motor Co., Inc.,*
  529 U.S. 861 (2000)......................................................................................15, 16

*Goldberg v. Enter. Rent-A-Car Co.,*
  14 A.D.3d 417, 417-418 (1st Dep't 2005)..............................................................28

*Golden Hill Paugussett Tribe v. Weicker,*
  39 F.3d 51 (2d Cir. 1994) .............................................................................17, 19

*Heller v. Coca-Cola Co.,*
  230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996)......................................................23

*Horowitz v. Sears, Roebuck and Co., Inc.,*
    137 A.D.2d. 492 (2d Dep't 1988) ..................................................................34

*Hubbard v. General Motors Corp.,*
    No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996)......................34

*Human Tissue Prods. Liability Litigation,*
    488 F. Supp. 430 (D.N.J. 2007) ..............................................................22, 23

*In re Canon Cameras Litig.,*
    237 F.R.D. 357 (S.D.N.Y. 2006) ..................................................................33

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.,*
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) .........................................................24

*In re Motel 6 Sec. Litig,*
    No. 93 Civ. 2183 (JFK), 93 Civ. 2866  1997 WL 154011
    (S.D.N.Y. Apr. 2, 1997)................................................................................32

*Inter Impex S.A.E. v. Comtrade Corp.,*
    No. 00 Civ. 0133 (GBD), 2004 WL 2793213 (S.D.N.Y. Dec. 6, 2004)............34

*Johnson v. Nyack Hosp.,*
    964 F.2d 116 (2d Cir. 1992)..........................................................................17

*Jones v. Rath Packing Co.,*
    430 U.S. 519 (1977).......................................................................................11

*Karlin v. IVF Am., Inc.,*
    93 N.Y.2d, 282 (1999) ..................................................................................24

*Kolle v. Mainship Corp.,*
    No. 04CV711 (TCP) (MLO), 2006 WL 1085067
    (E.D.N.Y. Apr. 20, 2006)..............................................................................34

*Landy v. Mitchell Petroleum Tech. Corp.,*
    734 F. Supp. 608 (S.D.N.Y. 1990).................................................................10

*Lava Trading Inc. v. Hartford Fire Ins. Co.,*
    326 F. Supp. 2d 434 (S.D.N.Y. 2004)............................................................26

*Malone v. White Motor Corp.,*
    435 U.S. 497 (1978).......................................................................................11

*McKart v. United States,*
    395 U.S. 185 (1969).......................................................................................18

*Mintz v. Am. Tax Relief, LLC*,
    837 N.Y.S. 841 (N.Y. Sup. Ct. 2001) ................................................................26

*Moses v. Citicorp Mortg. Inc.*,
    982 F. Supp. 897 (E.D.N.Y. 1997) ................................................................26

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)................................................................18

*Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*,
    46 F.3d 220 (2d Cir. 1995)................................................................19

*Negrin v. Norwest Mortgage, Inc.*,
    263 A.D.2d 39 (2d Dep't 1999)................................................................28

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)................................................................10

*Pennsylvania Employee Ben. Trust Fund v. Zeneca Inc.*,
    499 F.3d 239 (3d Cir. 2007)................................................................13

*People v. Tri-Union Seafoods*,
    No. CGC-01-402975 CGC-04-432394, 2006 WL 1544384
    (Cal. Sup. Ct. May 11, 2006)................................................................16

*Petitt v. Celebrity Cruises, Inc.*,
    153 F. Supp. 2d 240 (S.D.N.Y. 2001)................................................................25

*Pharm. Research & Mfrs. of Am. v. Walsh*,
    538 U.S. 644 (2003)................................................................18

*Redtail Leasing, Inc. v. Bellezza*,
    No. 95 Civ. 5191 (JFK), 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997)................................................................32

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947)................................................................13

*Roberti v. Schroder Inv. Mgmt. North Am., Inc.*,
    No. 04 Civ. 2404 (LTS) (THK), 2006 WL 647718
    (S.D.N.Y. Mar. 14, 2006) ................................................................10

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990)................................................................21, 22

*Schimmenti v. Ply Gem Indus., Inc.*,
   156 A.D.2d 658 (2d Dep't 1989)..................................................34

*Sichel v. Unum Provident Corp.*,
   230 F. Supp. 2d 325 (S.D.N.Y. 2002)..........................................26

*Small v. Lorillard Tobacco Co. Inc.*,
   94 N.Y.2d 43, 56 (N.Y. 1999) .........................................29, 30, 32

*Smith v. Chase Manhattan Bank, USA, N.A.*,
   293 A.D.2d 598 (2d Dep't 2002)..................................................30

*Smith v. Local 819 I.B.T. Pension Plan*,
   291 F.3d 236 (2d. Cir. 2002).........................................................10

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (N.Y. 2000) .............................................................28

*Sun Micro Med. Tech. Corp. v. Passport Health Commc'n, Inc.*,
   No. 06 Civ. 2083 (RWS), 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) ..........................11

*Talbott v. C.R. Bard, Inc.*,
   63 F.3d 25 (1st Cir. 1995)..............................................................12

*Tiny Tot Sports, Inc. v. Sporty Baby, LLC*,
   No. 04 Civ. 4487, 2005 WL 2044944 (S.D.N.Y. Aug. 24, 2005) ....................................25

*Treppel v. Biovail Corp.*,
   2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)...................................5

*USAlliance Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*,
   346 F. Supp. 2d 468 (S.D.N.Y. 2004)..........................................26

*United States v. an Article of Device Diapulse*,
   650 F.2d 908 (7th Cir. 1981) .........................................................24

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956).........................................................................17

*Universal Acupuncture Pain Serv., P.C. v. State Farm Mut. Auto. Ins. Co.*,
   196 F. Supp. 2d 378 (S.D.N.Y. 2002)..........................................32

*Watters v. Wachovia Bank, N.A.*,
   550 U.S. __, 127 S. Ct. 1559 (2007)..............................................11

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) ...................................................................................26

*Wiener v. Unumprovident Corp.*,
    202 F. Supp. 2d 116 (S.D.N.Y. 2002)..........................................................................25

*Williams Pipe Line Co. v. Empire Gas Corp.*,
    76 F.3d 1491 (10th Cir. 1996) ......................................................................................22

*Williams v. Gerber Prods. Co.*,
    439 F. Supp. 2d 1112 (S.D. Cal. 2006), *appeal docketed*, No. 06-55921
    (9th Cir. June 30, 2006) .......................................................................................2, 27, 35

## STATUTES

N.Y. U.C.C. § 2-313(1)...............................................................................................................35

N.Y. U.C.C. § 2-314 ...................................................................................................................33

5 U.S.C. § 701 ...............................................................................................................................9

21 U.S.C. § 331...................................................................................................................14, 23

21 U.S.C. § 332...............................................................................................................9, 14

21 U.S.C. § 333.......................................................................................................................14

21 U.S.C. § 334...............................................................................................................9, 14

21 U.S.C. § 336...............................................................................................................9, 14

21 U.S.C. § 337.......................................................................................................9, 12, 14

21 U.S.C. § 343.......................................................................................9, 11, 12, 14, 23, 24

21 U.S.C. § 378.......................................................................................................................14

21 U.S.C. § 393...............................................................................................................14, 19

## REGULATIONS

21 C.F.R. § 7 ..................................................................................................................................9

21 C.F.R. § 10 ...........................................................................................................8, 9, 12, 19, 20

21 C.F.R. § 101 ................................................................................................7, 8, 12, 13, 14, 21, 28

21 C.F.R. § 102 ........................................................................................7, 8, 12

71 Fed. Reg. 3922 (Jan. 24, 2006) ...........................................................15

56 Fed. Reg. 60,421 (Nov. 27, 1991).........................................................8

58 Fed. Reg. 2897 (Jan. 6, 1993) ...............................................................21

## MISCELLANEOUS

FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) ...................................8, 20

FDA Docket No. 2006P-0094 (Feb. 2006) ................................................20

Defendant Snapple Beverage Corporation ("Snapple") files this Motion to Dismiss in response to Plaintiff's Class Action Complaint (the "Complaint") and for the same shows as follows:

## I.    INTRODUCTION

On July 6, 2007, Hemant Mehta filed a putative nation-wide class action against Snapple, complaining about the labels of certain Snapple tea and juice drinks and purporting to bring claims under New York's consumer-fraud laws.   Nowhere did the complaint identify the particular Snapple product(s) allegedly bought by Mehta, if any.   Nor did Mehta say where he allegedly purchased the Snapple beverage(s) at issue or even allege that it was in New York— although Mehta nonetheless invoked New York law to govern claims purportedly brought on behalf of consumers across the nation.   Mehta complained about four alleged misrepresentations on Snapple labels, but in each case, clear factual information on the labels themselves— presented in the manner dictated by federal food labeling law—refuted Mehta's allegations by plainly stating the ingredients of each Snapple product, thereby allowing each consumer to review the information and make his or her own choice about buying and drinking such beverages.   On August 29, 2007, Snapple moved to dismiss Mehta's complaint.   Rather than respond, Mehta filed a notice of voluntary dismissal.

On October 8, 2007, Plaintiff Evan Weiner, a resident of New Jersey (*Compl.* ¶ 5), filed the Class Action Complaint.[1]   But Plaintiff's attempt at a new, recast lawsuit is no better than Mehta's.   In its motion to dismiss in *Mehta*, Snapple criticized Mehta's failure to allege he

---

[1]        Snapple advises the Court that a related action, *Holk v. Snapple Beverage Corporation* (Civil Action No. 3:07-cv-03018-MLC-JJH), which involves virtually identical claims and allegations brought on behalf of New Jersey consumers, was filed on May 18, 2007 in the U.S. District Court for New Jersey.   On October 18, 2007, Snapple filed a substantially similar motion to dismiss the amended complaint in *Holk*.   Plaintiff filed her opposition to Snapple's motion on November 5, 2007.

purchased any particular Snapple beverage.  Plaintiff's complaint is no better, alleging only that

he purchased "many of the Snapple beverages . . . mentioned" in the Complaint "[o]n numerous

occasions over the course of the preceding six (6) years . . . ."  *Compl.* ¶ 37.  Plaintiff, like

Mehta, still has not pleaded a single product purchase with the specificity required by New

York's consumer fraud laws.  And nowhere does Plaintiff mention a single piece of "advertising,

marketing, or promotion" seen or heard by him (either on television, the radio or in a magazine)

that was allegedly deceptive or misleading before allegedly purchasing any Snapple product.

Instead, Plaintiff makes broad, conclusory allegations about generic "advertising" (*see Compl.* ¶¶

20-21) that only highlight Plaintiff's total failure to allege that a single piece of "advertising"

was misleading, if any.  Plaintiff cannot cure the fatal flaws in Mehta's complaint simply by

reciting an incantation over the labeling allegations as "false advertising" claims.  And Plaintiff's

attempt to repackage Mehta's labeling claims cannot obscure the fact that the so-called

"advertising" Plaintiff complains about can only be the labels on (unspecified) Snapple drinks

that Plaintiff allegedly purchased.[2]

This case, like *Mehta*, is about whether Snapple products carry the U.S. Food and Drug

Administration (FDA)-mandated labels necessary for each consumer to make his or her own

choice about buying the product.  If it were any different, then the complaint in this alleged

"false advertising" case would actually refer to an advertisement that (i) was specifically and

---

[2]    In the interests of clarity and completeness, Snapple has attached a copy of the Acai
Blackberry label as Exhibit A.  While Plaintiff has not alleged a specific product purchase, he
has focused on this beverage as an example and it encompasses both categories of Plaintiff's
complaints (*i.e.*, "All Natural" and containing a specific fruit juice when no such fruit juice is
contained in the beverage).  The Court may properly consider it because Plaintiff has pleaded
words and phrases from the label without attaching it in its entirety for the Court's consideration.
*See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on motion to dismiss,
court may consider documents that the plaintiff relied on while drafting the complaint); *Williams
v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006) (considering labels attached
to motion to dismiss), *appeal docketed*, No. 06-55921 (9th Cir. June 30, 2006).

materially false, (ii) was seen or heard by Plaintiff before purchasing a specific Snapple beverage, and (iii) influenced Plaintiff to make a purchase in the first place. Such pleading does not exist for good reason: Plaintiff cannot comply with both Rule 11 and the specificity requirements of New York consumer law.

The one passing reference Plaintiff can muster to an "advertisement" is the Snapple website. *Compl.* ¶ 21. But he says nothing about the website other than to simply say "website." He does not say the website constitutes an advertisement, or that the website was viewed by him before he allegedly purchased a Snapple product, if any, or that the website contained a single word that was materially misleading. Likely, he does not plead these things because of the same balance between Rule 11 and New York consumer law. In fact, visitors to Snapple's website find a precise description of the Acai Blackberry Juice Drink referenced by Plaintiff, including each ingredient from pear juice to natural flavors to water to high fructose corn syrup. *See*, *e.g.*, http://www.snapple.com/products/defaultnonflash.aspx?item=36 (current version of Snapple website) (attached as Exhibit B).[3]  A consumer is thus provided with everything necessary to make his or her own informed decision. Moreover, the labels on Snapple bottles on the shelves of retailers tell the whole story, namely that each beverage:  (i) is sweetened by high fructose corn syrup, and (ii) contains pear juice and natural flavors. This information is presented as federal labeling law, which expressly dictates the precise placement, size, and other parameters of the information (and the use and display of characterizing natural flavors), requires. Plaintiff's state-law "false advertising" claims ignore this regulatory context, disregard Snapple's compliance with the panoply of rules, regulations, pronouncements, and policy guidance

---

[3]      This Court may properly consider the attached copy of the webpage because, among other reasons, Plaintiff has expressly referenced Snapple's website in the Complaint. *See Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

promulgated by the FDA, and attempt an end-run around the agency's authority to regulate, in its discretion and expertise, all aspects of food and beverages within its statutory mandate.

National uniformity in food and beverage labeling is an important regulatory and policy goal. It provides manufacturers and consumers a consistent and meaningful way to make available and review information about foods and beverages. The state law Plaintiff attempts to invoke was designed to deter improper or fraudulent trade practices within the State of New York—not to establish food and beverage labeling requirements for the Nation. That is the responsibility of the FDA, which exercises its congressionally delegated authority to issue comprehensive, detailed regulations and policy guidance that Snapple follows. The Federal Trade Commission (FTC), which has jurisdiction over food advertising, has "recognized the scientific expertise of the FDA in this area" and "seeks to harmonize its advertising enforcement program to the fullest extent possible" with FDA labeling rules and regulations. Federal Trade Commission, *Enforcement Policy Statement on Food Advertising* (May 1994). As a result, the FTC has stated that it generally will not take action where, as here, the product claims "comply with FDA's regulations." *Id.* Plaintiff remains free to address any legitimate concerns (though there are none) to the FDA or petition the agency to issue regulations more in line with his own personal policy preferences (and choices in beverages he buys and drinks). But Plaintiff's ill-advised attempt to regulate through litigation must be rejected.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss the Complaint for multiple reasons. First, federal law preempts Plaintiff's claims. Second, and alternatively, Plaintiff's claims should be dismissed under the primary jurisdiction doctrine. Third, the Complaint fails to state a consumer fraud claim for a variety of reasons, including that Plaintiff does not allege that he purchased any Snapple beverage in New York and, even if he

had, his allegations are contradicted by the Snapple labels themselves.  Fourth, Plaintiff's unjust

enrichment claim is fatally flawed because he did not confer any "benefit" upon Snapple to his

detriment.  Finally, Plaintiff's warranty claims should be dismissed for multiple additional

reasons, including failure to plead that he purchased a specific Snapple product and that such

product was non-merchantable.  For all these reasons, the Complaint must be dismissed in its

entirety.[4]

## II.     STATEMENT OF FACTS

### A.     THE *MEHTA* PUTATIVE NATION-WIDE CLASS ACTION

Name plaintiff Hemant Mehta filed a putative nation-wide class action seeking treble

damages of "not less than $100 million," disgorgement of profits, injunctive relief, declaratory

relief, and attorneys' fees purportedly on behalf of "all persons similarly situated" who in the last

six years purchased (i) a "Snapple or Cadbury Schweppes 'All Natural' beverage that contained

[high fructose corn syrup] or other unnatural ingredient," (ii) a "Snapple 'juice drink,'" and/or

(iii) a "Snapple 'red tea' beverage."  *Mehta v. Cadbury Schweppes SBS, Inc.*, 07-CIV-6262, at

Dkt. 1 [Compl.] at ¶¶ 9, 67.  Citing a variety of FDA regulations (*id.* ¶¶ 21, 44), Mehta alleged

that Snapple's "mislabeling" (*id.* ¶ 2) is actionable under the New York Consumer Protection

Act, Article 22-A of the New York General Business Law, section 349 (*id.* ¶¶ 40-48) and

asserted state-law claims for unjust enrichment, breach of the implied warranty of

merchantability, and breach of express warranty.  *Id.* ¶¶ 49-66.  To perhaps provide further

clarity on his vague and sprawling class definition, Mehta complained about labeling as follows:

---

[4]      Given the four attempts—two in New York, and two in New Jersey—to plead a
consumer fraud action based on the virtually identical claims and allegations in the *Holk*, *Weiner*,
and *Mehta* complaints, any request for yet another chance to replead should be denied.  It is well
settled that leave to amend should be denied where, as here, such an amendment would be futile.
*Treppel v. Biovail Corp.*, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (denying leave to
amend where futile "because plaintiff has already had two bites at the apple and they have
proven fruitless").

---

(i) titling and graphically depicting Snapple's acai-blackberry flavored beverages with fruits that are not contained in the juice in the product; (ii) labeling Snapple "red tea" beverages as "tea" and describing them as "red tea"; and (iii) describing Snapple beverages as "Made from the Best Stuff on Earth" and "All Natural" when they contain the natural sweetener known as high fructose corn syrup. *Id.* ¶ 2.

On August 29, 2007, Snapple filed a motion to dismiss Mehta's complaint in its entirety. Snapple argued, among other things, that the FDA had primary jurisdiction over Mehta's labeling claims and should have the opportunity to address them in the first instance. *See Mehta v. Cadbury Schweppes SBS, Inc.*, 07-CIV-6262, at Dkt. 6 [Mot. Dismiss Mem.] at 13-21. Attaching the labels themselves to the motion, Snapple demonstrated that they conform with the panoply of FDA rules, regulations, and policies. *See, e.g., id.* at 17-18. Snapple asserted that, in all events, Mehta's labeling claims failed to state a consumer fraud or any other claim for a variety of reasons, including failure to allege product purchase in New York. *See id.* at 21-33. Rather than respond to the motion, Mehta filed a Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a) on September 26, 2007.

### B.    PLAINTIFF'S PUTATIVE NATION-WIDE CLASS ACTION

Name plaintiff Evan Weiner filed his Class Action Complaint on October 8, 2007. Dropping Mehta's claims concerning Snapple's rooibos or "red tea" beverages and "Made from the Best Stuff on Earth" (and carving out New Jersey residents from the proposed nation-wide class), Plaintiff attempts to recast Mehta's labeling claims as "advertising" claims, "alleging that Defendant's marketing, advertising, and promotion of its beverages is misleading, and/or inaccurate, and/or deceptive." *Compl.* ¶ 1. The Complaint does not mention even one specific incident of Snapple's "marketing, advertising, and promotion" that is allegedly misleading. Nor does Plaintiff—a New Jersey resident (*id.* ¶ 5)—plead that he purchased a specific Snapple

product in New York (or anywhere else) or that he saw or heard any allegedly false or misleading Snapple advertising before allegedly making any such purchase.  Instead, Plaintiff offers conclusory allegations concerning the advertising of (1) "products as 'All Natural' when the products contain High Fructose Corn Syrup" and (2) "beverages containing a specific fruit juice when, in fact, no such fruit juice is contained in the beverages."  *Id.* ¶ 2(a) and 2(b).[5]

### C.   THE COMPREHENSIVE FEDERAL REGULATORY SCHEME FOR LABELING FOOD AND BEVERAGES

The Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 301, *et seq.*, vests the FDA with broad regulatory authority over food and beverage labeling, pursuant to which the FDA has promulgated extensive regulations governing all aspects of such labeling, including ingredients (21 C.F.R. §§ 101.4, 101.22 & 101.100), nutrition information (*id.* at § 101.9), nutrition content claims (*id.* at §§ 101.13, 101.54, 101.56, 101.60-62, 101.65 & 101.69), and health claims (*id.* at §§ 101.14, 101.70-83).

Labeling for beverages containing fruit juice (as bottled by Snapple) is governed by 21 C.F.R. §§ 102.33 and 101.30.  These regulations establish a series of detailed rules including (i) the proper use of the term "juice" to describe a beverage containing less than 100 percent juice, *id.* § 102.33(a); (ii) the proper order of ingredients on a beverage containing a blend of juices, *id.* at § 102.33(b); (iii) the proper name of a beverage containing a blend of juices, *id.* § 102.33(c); (iv) the proper labeling of a beverage where the juice named on the label "is not the predominant juice," *id.* at § 102.33(d)(1-2); (v) the "pictorial representations" that may appear on beverage labels, *id.* at § 102.33(f); (vi) the type size that must be used on beverage labels in which one or more juice is made from concentrate, *id.* at § 102.33(g)(1); and (vii) the requirement that

---

[5]   The plaintiff in *Holk*, *see infra* at p. 1 n.1, recently advised the New Jersey court in her opposition to Snapple's motion to dismiss that she has dropped all claims with the exception of the "All Natural" claim.

beverages purporting to contain juice must bear a prominent declaration of the percent juice in the product. *Id.* § 101.30(d). In addition, the FDA has established a definition for "natural flavors" that specifies the type of processing that can be undergone by products labeled as "natural flavors." 21 C.F.R. § 101.22(a)(3). The FDA has also established pervasive requirements governing the use of vignettes of fruit and other characterizing ingredients and has determined when the use of such graphics will trigger the use of terms such as "naturally flavored," "artificially flavored," and/or "with other natural flavors." *Id.* at § 101.22(i).

The FDA has a well-established policy on the use of "all natural" and "100 percent natural." Under the policy, the FDA will not restrict the use of the term "natural" except for added color, synthetic substances, and flavors; the FDA views "natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); 56 Fed. Reg. 60,421, 60,466 (Nov. 27, 1991). The FDA's pronouncements on "natural" are binding on the agency, which cannot take regulatory action against a company that labels its products in conformance with them. *See* 21 C.F.R. §§ 10.85(d)(1),(e). The FDA has consistently maintained its policy on the labeling of products as "all natural." *See*, *e.g.*, FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) (attached as Exhibit C) (FDA declining to alter its position regarding the use of the term "natural," including a request to restrict the term to products containing unaltered (*i.e.*, minimally processed) food ingredients).

The FFDCA expressly prohibits any deviation from FDA labeling requirements by mandating that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food [and beverages] of the type required by [various sections of

the FFDCA] that is not identical to the requirement of [such] section[s]."  21 U.S.C. § 343-1(a)(1)-(a)(5).   "State requirement" means "any statute, standard, regulation, or other requirement that is issued by a State," 21 C.F.R. § 100.1(b)(5), and encompasses common-law duties.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).  The FFDCA does not provide either an express or an implied private right of action to enforce violations of the statute or regulations promulgated thereunder.  21 U.S.C. § 337(a).  Rather, "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  *Id.*  The FDA is authorized to issue "suitable written notice or warning," request a voluntary recall of unlawful products, seek an order enjoining manufacturers from selling unlawful products, or an order seizing them.  21 U.S.C. §§ 332, 334, 336; 21 C.F.R. § 7.40.  Any individual can file a citizen petition requesting the FDA to issue a regulation, amend a current regulation, or take other appropriate action.  21 C.F.R. § 10.30(e).  After the FDA has made a final decision about what action, if any, to pursue, an individual aggrieved by that decision can seek judicial review pursuant to 5 U.S.C. § 701.

The FTC has primary responsibility over food and beverage advertising under the Federal Trade Commission Act ("FTC Act").  "Recogniz[ing] the scientific expertise of the FDA in this area," the FTC has emphasized "the importance of consistent treatment of nutrient content and health claims in food advertising and labeling and seeks to harmonize its advertising enforcement program to the fullest extent possible."  Federal Trade Commission, *Enforcement Policy Statement on Food Advertising* (May 1994).  The FTC "has traditionally accorded great weight to FDA's scientific determinations in matters of nutrition and health and will continue to do so."  *Id.*  While the FTC is authorized to investigate and/or take any other appropriate

enforcement action regarding "unfair or deceptive acts or practices," the FTC has stated that it generally will not take action where the product claims "comply with FDA's regulations." *Id.*

## III.     ARGUMENTS AND AUTHORITIES

### A.     LEGAL STANDARD GOVERNING MOTION TO DISMISS

In deciding a motion to dismiss, the factual allegations in the complaint "are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor." *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).  The Court, however, does not have to accept "a strained interpretation of such allegations." *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 615 (S.D.N.Y. 1990).   And "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002) (internal quotation marks and citation omitted).  "[M]ore than labels and conclusions" are required, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007) (citations omitted).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face" in order to withstand a motion to dismiss.  *Id.*  Otherwise, the complaint must be dismissed.  *Id.*

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).  This Court may therefore consider federal governmental documents (and statements made therein) concerning FDA regulations, all of which are implicated by and central to Plaintiff's claims. *See Roberti v. Schroder Inv. Mgmt. North Am., Inc.*, No. 04 Civ. 2404 (LTS) (THK), 2006 WL 647718, at *3 (S.D.N.Y. Mar. 14, 2006) (taking judicial notice of EEOC filings and noting that "a court may take judicial notice of administrative records . . . without converting [a motion to dismiss] to a motion for summary

judgment"); *see also Sun Micro Med. Tech. Corp. v. Passport Health Commc'n, Inc.*, No. 06 Civ. 2083 (RWS), 2006 WL 3500702, at *10 (S.D.N.Y. Dec. 4, 2006) (proper for court to take judicial notice of records and reports of administrative bodies when ruling on motion to dismiss).[6]

### B.   FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS.

The preemption doctrine arises from the constitutional rule that the laws of the United States are the supreme law of the land, "any Thing in the Constitution or Law of Any State to the Contrary notwithstanding."   U.S. Const., art. VI, cl. 2; *Cippollone*, 505 U.S. at 516.   "The purpose of Congress is the ultimate touchstone" of preemption analysis.  *Malone v. White Motor Corp.*, 435 U.S. 497 (1978).   Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose."  *Jones v. Rath Packing Co.,* 430 U.S. 519 (1977).  As the Supreme Court recently reaffirmed, preemption prevents "the burdens and undue duplication state controls could produce" where Congress has determined that "confusion would necessarily result from control possessed and exercised by two independent authorities."  *Watters v. Wachovia Bank, N.A.*, 550 U.S. __, 127 S. Ct. 1559, 1568 (2007).  These principles compel the conclusion that Plaintiff's claims are preempted and should be dismissed.

1.   Plaintiff's Claims Are Expressly Preempted by the FFDCA.

Section 403A of the FFDCA expressly preempts any state requirement—including one imposed by a tort suit—that is "not identical" to certain requirements imposed by federal labeling regulations.  21 U.S.C. § 343-1.  Of most relevance here is section 343-1(a)(2), which specifically preempts state requirements "not identical" to the ingredient labeling provisions of section 343(i)(2), and section 343-1(a)(3), which specifically preempts state requirements "not

---

[6]     For the Court's convenience, an Index of Regulations is attached as Exhibit D, which contains the governing labeling requirements that Snapple follows.

identical" to the common or usual name provisions of section 343(i)(1) and the artificial labeling provisions of section 343(k).  For example, the FDA has established a "common or usual" name regulation for juice beverages that specifies the name that must appear on such products.  21 C.F.R. § 102.33.  Plaintiff complains about the names of certain Snapple beverages, but he does not plead or suggest that Snapple has not labeled its products consistent with these regulations, nor could he because Snapple conforms its labels to FDA rules.

Moreover, the FDA has express enforcement authority, *see* 21 U.S.C. § 337(a), and the FFDCA expressly precludes a private right of action, *see Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).  Plaintiff's simple and appropriate remedy is to complain to the FDA as the law allows.[7]  *See* 21 C.F.R. § 10.30(e).  As one court explained in a similar context, "[t]o avoid the possibility of disuniform treatment, Congress placed enforcement authority in the FDA. . . .  Centrally situated and with the requisite expertise, the FDA is in the best position to determine whether the provisions of the [statute] have in fact been violated and to ensure that the law is applied in a uniform manner."  *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 29-30 (1st Cir. 1995).  "Given the FDA's central enforcement role, the preemptive scope" of the FFDCA "becomes clear," and bars Plaintiff's roundabout attempt to impose requirements that are "not identical" to the FDA's "common" or "usual" name regulations.  *See id.* at 30.

So too with Plaintiff's claims regarding the "characterizing" ingredients in Snapple products—*i.e.*, the primary, recognizable flavors such as acai and blackberry.  *See* 21 U.S.C. § 343-1(a)(3),(4).  The FDA has established definitions for artificial flavors and natural flavors, 21

---

[7]     This is exactly what the Center for Science in the Public Interest (CSPI) has done in petitioning the FDA to take action against Coca-Cola's "Fuze" line of beverages, *see* http://www.cspinet.org/new/200709261.html, and what the Sugar Association has done in its citizen petition asking the FDA to define "natural" in a manner that would preclude the use of the term on products such as high fructose corn syrup, *see infra* at p. 20.  These petitions are further proof, were any needed, that the proper venue for Plaintiff's complaint is the FDA.

C.F.R. §§ 101.22(a)(1),(3), and detailed requirements for identifying the presence of flavors when the label depicts the presence of characterizing ingredients through vignettes or other means. 21 C.F.R. § 101.22(i). The regulations specifically authorize the use of vignettes, such as pictures of acai berries, in products that do not contain the ingredient characterized by the vignette, provided the product is labeled as "naturally" or "artificially flavored." *Id.* Plaintiff does not and cannot allege any violation of these regulations because the FFDCA prohibits private rights of action and because Snapple follows the regulations. Accordingly, the FFDCA expressly preempts Plaintiff's claims concerning the labeling of flavors as ingredients, artificial flavors, and the common or usual names for foods.

> 2.     Plaintiff's Claims Are Impliedly Preempted Because Congress Has Fully Occupied the Field.

Even without explicit preemptive language, Congress can impliedly preempt state-law requirements when it so thoroughly occupies an area of the law "'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153 (1982) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Here, the sheer enormity of the federal statutory and administrative framework is a powerful indicator of Congress' intent to fully occupy the labeling field—and thus impliedly preempt Plaintiff's common-law "mislabeling" claims. *See, e.g., Pennsylvania Employee Ben. Trust Fund v. Zeneca Inc.*, 499 F.3d 239, 251-52 (3d Cir. 2007) (holding that consumer fraud claims involving prescription drug advertisements were impliedly preempted by the FFDCA because, among other reasons, the "high level of specificity in federal law and regulations with respect to prescription drug advertising is irreconcilable with general state laws").

The FFDCA includes myriad provisions setting forth the requirements necessary for compliance, as well as the potential consequences of noncompliance, within the comprehensive federal regulatory scheme.[8]  To implement this framework and provide for uniform national enforcement, Congress delegated broad authority to the FDA to promulgate such rules and regulations as may be necessary to promote and protect public health.  21 U.S.C. § 393.  Notably, Congress vested the FDA with authority to promulgate regulations to ensure that food and beverages are "properly labeled."  21 U.S.C. § 393(b)(2)(A).  The FDA, in turn, has issued scores of regulations that pertain specifically to labeling, from general provisions concerning misbranding to specific labeling requirements.  *See generally* 21 C.F.R. §§ 101.1-.108, 102.5-.57; *see also* pp. 7-8, *supra*.  In addition, Congress has vested the FDA with express authority to enforce the FFDCA, 21 U.S.C. § 337(a), and provided the FDA with a wide-ranging arsenal of weapons to combat violations.[9]  Federal law has occupied the field and there is no room for Plaintiff's thinly veiled attempt to regulate by litigation.

> 3.     Plaintiff's Claims Are Obstacles to Important Federal Objectives and Therefore Impliedly Preempted.

State-law claims are also impliedly preempted when they "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *Clean Air Markets Group v. Pataki*, 338 F.3d 82, 89 (2d Cir. 2002) (state pollution law preempted because it "impermissibly interferes with the methods by

---

[8]     *See*, *e.g.*, 21 U.S.C. § 343(a) (defining "misbranding"); 21 U.S.C. § 331(a) (prohibiting "misbranding"); 21 U.S.C. § 343-1 (providing for "National uniform labeling"); 21 U.S.C. § 333(a) (listing applicable penalties for "misbranding"); 21 U.S.C. § 334(a) (making misbranded food and beverages subject to seizure); 21 U.S.C. § 378 (providing for the referral of misbranded products to the FTC).

[9]     These weapons include the authority to obtain an ex parte court order for the seizure of goods subject to the Act, *see* 21 U.S.C. § 334, the authority to initiate proceedings in a federal district court to enjoin continuing violations of the FFDCA, *see* § 332, and the authority to request that a U.S. Attorney bring criminal proceedings against violators, *see* § 333.

---

which [federal law] was designed to reach [the] goal of decreasing SO2 emissions, and therefore it stands as an obstacle to the execution of federal objectives") (internal quotation marks and citation omitted).  "Obstacle" preemption applies even though a statute contains an express preemption clause.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-289 (1995).

In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 874-75 (2000), the Supreme Court affirmed that preemption does not "require a formal agency statement of pre-emptive intent as a prerequisite to concluding that a conflict exists"—*i.e.*, that preemption can (and must) be inferred from a comprehensive federal regulatory scheme.  The Supreme Court thus held that because federal standards concerning airbags "deliberately provided the manufacturer with a range of choices among different passive restraint devices," common-law claims seeking to "restrict that range of choices" were preempted "as an obstacle to the accomplishment and execution of important . . . [federal] objectives."  *Id.* at 881.  Here, the FDA is charged with overseeing a complex statutory scheme that requires the agency to balance important and sometimes competing policy objectives—a balance that might easily be upset by allowing mislabeling claims to proceed under state tort law.  *See Buckman*, 531 U.S. at 348 (holding that tort claims based on misrepresentations made in the FDA drug-approval process would "disrupt the balancing of federal statutory objectives").

In the similar context of drug labeling, the FDA has taken the position that given "the comprehensiveness of FDA regulation of drug safety, effectiveness, and labeling under the [FFDCA]," state-law tort suits are preempted because they "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs."  71 Fed. Reg. 3922, 3933-36, 3967-69 (Jan. 24, 2006).  That reasoning applies just as forcefully to the labeling requirements at issue here, where Plaintiff's request for injunctive, declaratory, and

monetary relief based on alleged product "mislabeling" impermissibly intrudes upon the comprehensive and uniform regulatory scheme for food and beverage labeling established by Congress and implemented (and enforced) by the FDA.  As in *Geier*, Plaintiff's claims, if accepted, would stand as an obstacle to the federal objectives of consistency and uniformity by imposing new requirements and state-law standards.

For example, in *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 284 (D. Mass. 1986), the plaintiff ("ALDF") sued a Wisconsin veal producer (Provimi) alleging that Provimi "ought to tell consumers that its veal might be unhealthful because it comes from calves that are fed antibiotics" and that "not telling [consumers] is unfair and deceptive."  The district court held that ALDF's consumer-fraud claims were preempted by a "comprehensive federal scheme regulating the labeling, packaging and marketing of meat" that made clear "Congress' intent to occupy the field . . . and to direct the State to leave all regulatory activity in that area to the federal government . . . ."  *Id.* at 284.  ALDF's lawsuit was "an inappropriate remedy" and dismissal was required.  *Id.* at 281; *see also People v. Tri-Union Seafoods*, No. CGC-01-402975, CGC-04-432394, 2006 WL 1544384, at *2 (Cal. Sup. Ct. May 11, 2006) (holding that state requirements regarding canned tuna labels were preempted).

Here, Congress has assigned responsibility for making judgments (and enforcing them) about labeling to the regulatory expertise of the FDA, not to the vagaries of the tort system. Given (1) the FFDCA's express preemption provisions, (2) the comprehensiveness of the federal regulatory framework and the FDA's express enforcement authority, and (3) Congress's important objectives of national uniformity and consistency in regulating food and beverage labeling, Plaintiff's state-law claims are preempted and must be dismissed.

### C.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE.

Even if the Court thought there might be some room at the margins of the FDA's comprehensive regulatory regime for judicial action, it nevertheless should dismiss Plaintiff's claims on the ground of primary jurisdiction because they involve "resolution of issues which, under a regulatory scheme, have been placed within the special competence" of the FDA.  *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956) (noting that the "special competence" or "expertise" an agency brings to bear is not merely technical but extends to the policy judgments needed to implement an agency's mandate); *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994) (same).  "Primary jurisdiction is a judge-made doctrine intended to promote proper relationships between the courts and administrative agencies." *Johnson v. Nyack Hosp.*, 964 F.2d 116, 122 (2d Cir. 1992).  The doctrine serves two principal interests: "consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims." *Id.*  The Second Circuit has also cited judicial economy as an interest that the primary jurisdiction doctrine can serve.  *Id.* at 123.

In this Circuit, the primary jurisdiction analysis generally focuses on four factors:  "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the

agency has been made."[10]  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006) (holding that district court should have dismissed claim pursuant to primary jurisdiction doctrine where issues involved "technical or policy considerations within the [Federal Communications Commission's] field of expertise").  Those factors weigh in favor of recognizing the FDA's primary jurisdiction in this matter.  In addition, the advantages of applying the doctrine outweigh any potential costs and delays that may result from doing so.  *See id.* at 90 (possibility of additional agency delay does not counsel against primary jurisdiction where case involves "highly complicated factual and policy disputes that the [agency] is uniquely well-situated to address").

It is difficult to imagine claims that more obviously should be resolved by the FDA, and not by litigation, than Plaintiff's.  Dismissal of his claims on primary jurisdiction grounds would further important public policy goals by promoting "consistency and uniformity" of decision, *see Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-304 (1976), and by "produc[ing] better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime."  *See Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring) (*citing W. Pac. R.R. Co.*, 352 U.S. at 63-65); *see also McKart v. United States*, 395 U.S. 185, 194 (1969) (administrative agencies like FDA enjoy "primary jurisdiction" to exercise their "discretion" and apply their "expertise").

---

[10]     A party's "failure to make a prior application to the FDA" is "not dispositive" and does not preclude application of the primary jurisdiction doctrine.  *See Bernhardt v. Pfizer*, Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22, 2000).

      1.      The Primary Jurisdiction Factors Weigh in Favor of Dismissing Plaintiff's Claims.

The Supreme Court has instructed that in "cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952). Here, Congress has entrusted the FDA with broad authority to promulgate and enforce such rules and regulations pertaining to labeling as the agency deems necessary to protect consumers and their safety. *See* 21 U.S.C. § 393. The FDA thus has "primary jurisdiction to make the initial determination on issues within its statutory mandate." 21 C.F.R. § 10.25(b).

Plaintiff, however, attempts to bypass the FDA's regulatory authority and expertise, prominently listing the question "[w]hether [high fructose corn syrup] is an 'All Natural' ingredient" (*Compl.* ¶ 15(a)) first among the questions of law and fact allegedly common to the putative class. He seeks to enjoin Snapple "from marketing, advertising, and promoting its beverages as containing specific fruit juice(s) when, in fact, the specific fruit(s) is not contained in the beverage" (*id.* ¶ 67(j)) and from "marketing, advertising, and promoting its beverages as 'All Natural' so long as they contain [high fructose corn syrup]" (*id.* ¶ 67(i)). Plaintiff's claims plainly involve "technical or policy considerations" that fall squarely within the FDA's "field of expertise" (and discretion) in food and beverage labeling and should be resolved by the FDA in the first instance. *See Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*, 46 F.3d 220, 222 (2d Cir. 1995); *Golden Hill*, 39 F.3d at 59. Plaintiff cannot avoid this conclusion no matter how he attempts to repackage Mehta's labeling claims.

For example, the FDA has recently and repeatedly affirmed its position regarding the use of the term "natural" on food and beverage labels. The FDA will not restrict the use of the term "natural" except for added color, synthetic substances, and flavors, and the agency views

"natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  *See* pp. 8-9, *supra*.  If Plaintiff does not agree with the FDA's position, this lawsuit is not the proper recourse.  Instead, Plaintiff's appropriate remedy is to petition the FDA to issue a regulation, amend a current regulation, or take an enforcement or any other appropriate action.  21 C.F.R. § 10.30(e).

That is precisely the path followed by the Sugar Association in filing a citizen petition on this issue that is currently pending before the FDA regarding the term "natural."  *See* FDA Docket No. 2006P-0094 (Feb. 2006) (attached as Exhibit E).  Indeed, Plaintiff presents issues of law and fact in this lawsuit that are virtually identical to those raised by the Sugar Association in its petition.  *Compare id.* (asking the FDA to adopt a "minimally processed" definition of "natural"), *with Compl.* ¶¶ 24, 25 (asserting that high fructose corn syrup is "highly processed" and "does not exist in nature").  Rather than seeking to regulate through litigation, the primary jurisdiction doctrine requires Plaintiff to avail himself of the regulatory framework established by Congress in petitioning the FDA for a regulation along the lines he prefers, so that the agency can appropriately bring its expertise and regulatory authority to bear on this complex issue and balance the many different interests and competing considerations at stake.  This is precisely what the FDA has publicly declared as its role and obligation on this precise issue regarding use of the term natural.  *See* Ex. C (FDA denial of petition) (stressing that "there are many facets of this issue that the [FDA] will have to carefully consider" before undertaking any change).

Similarly, Plaintiff complains about Snapple's depictions of acai berries and blackberries when the juice drink contains pear juice and natural acai and blackberry flavors.  *Compl.* ¶¶ 34-36.  As an initial matter, Plaintiff does not identify any specific "advertising" that uses such

graphics.  Nonetheless, the FDA has expressly approved vignettes on juice-beverage labels that contain only the natural or artificial flavor of the represented fruit.  *See*, *e.g.*, 21 C.F.R. § 101.22(i); 58 Fed. Reg. 2897, 2921-2 (Jan. 6, 1993) (expressly declining to limit depictions of fruit to those fruit juices specifically found in a product).  Plaintiff does not plead or suggest that the graphics depart from FDA rules and regulations, nor could he as Snapple conforms with them.  If Plaintiff is dissatisfied with the existing regulatory framework, the appropriate recourse is to petition the FDA to issue new regulations or amend existing ones—not to file this lawsuit.

In sum, the primary jurisdiction factors point in favor of dismissing Plaintiff's claims, which (i) involve technical and policy considerations within the FDA's particular field of expertise, (ii) fall squarely within the FDA's discretion, (iii) pose a substantial danger of inconsistent rulings, and (iv) involve issues already pending before the FDA.  In addition, because this case involves "highly complicated factual and policy disputes that the [FDA] is uniquely well-situated to address," the advantages of applying the doctrine outweigh any potential costs and delays that may result from doing so.  *See Ellis*, 443 F.3d at 90; *see also Sandoz*, 902 F.2d at 231 n.10 (fact that plaintiff "has been unable to get a quick response from the FDA" does not warrant judicial intervention in the matter).

> 2.     Courts Regularly Apply the Primary Jurisdiction Doctrine to Dismiss Similar Claims.

A leading case on the FDA's primary jurisdiction over labeling claims confirms that referral to the FDA would be particularly appropriate here.  The issue in *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222 (3d Cir. 1990) involved whether an ingredient in cough syrup should be labeled as an "active" or "inactive" ingredient as those terms were defined in FDA regulations.  *Id.* at 230-31.  The plaintiff brought an action under the Lanham Act, alleging (like Plaintiff) that Vicks was making false and deceptive statements, and sought damages and an

injunction.  *Id.* at 223.  Vicks argued that the plaintiff's false advertising claim was really just a mislabeling claim in disguise, and that while plaintiffs' allegations might create a cause of action for the FDA, they did not give rise to a private cause of action under the Lanham Act.  *Id.* at 230.

The Third Circuit agreed with Vicks, noting that accepting the plaintiff's position "would require us to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations."  *Id.*  The court noted that the plaintiff was "free to petition the FDA to investigate these alleged labeling violations," and made clear that merely because the plaintiff "has been unable to get a quick response from the FDA," that "does not create a claim for [plaintiff] under the Lanham Act."  *Id.* at 231 n.10.  Under *Sandoz*, that the FDA has not taken action to Plaintiff's liking is no reason for a court to supplant the FDA from its proper role. To the contrary, deferring to the FDA would serve the important goal of applying the agency's expertise and policy judgments to the issues presented while conserving judicial resources.  *See*, *e.g.*, *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996).

The recent decision in *Human Tissue Prods. Liability Litigation*, 488 F. Supp. 430 (D.N.J. 2007), is to the same effect.  There, plaintiffs sought an order requiring defendants to give notice to "unnamed class members of the need to have a blood test" in light of "potential dangers arising from their receipt of unscreened human tissue."  *Id.* at 432.  The district court declined plaintiffs' request, noting that FDA regulations "set forth specific recall procedures" and "require the FDA to evaluate the precise issue raised by Plaintiffs' motion. . . ."  *Id.* at 432-33.  "As these regulations show," the court concluded, "Congress clearly vested the FDA with the regulatory authority to assess and manage the communications regarding product recalls."  *Id.* at 433.  Because "Plaintiffs are essentially asking the [c]ourt to perform tasks traditionally

relegated to the FDA," the court denied the motion and directed plaintiffs, "should they wish, to file a 'citizens' petition' with the FDA under 21 C.F.R. § 10.30." *Id.*

This Court reached the same conclusion in *Bernhardt v. Pfizer*, Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645, at *1 (S.D.N.Y. Nov. 20, 2000). There, plaintiffs sought an injunction ordering Pfizer to notify users of a prescription drug (Cardura) of a clinical study finding it "less effective" than another drug. *See id.* This Court reasoned that the question of whether a National Health Institute's study suggesting Cardura was less effective than other drugs was not a question that could be decided without specialized expertise. *Id.* at *2. Plaintiffs were essentially asking this Court to determine the appropriate warning notice on a drug on the basis of scientific and medical principles not in its area of expertise. *Id.* Concluding that the issue of "whether the notice requested by plaintiffs is warranted is a decision that has been squarely placed within the FDA's expert discretion," this Court applied the primary jurisdiction doctrine, granted defendants' motion for judgment on the pleadings as to the claim for injunctive relief, and ordered plaintiffs' to direct their request to the FDA for its review. *Id.* at *3.

The court in *Heller v. Coca-Cola Co.*, 230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996), held likewise. Heller brought consumer fraud and unjust enrichment claims against soft-drink manufacturers on behalf of consumers who purchased soft drinks containing a low-calorie sweetener (Aspartame) that Heller alleged had become spoiled, stale, or tasteless due to the sweetener's limited shelf life. *Id.* Citing the same statutory provisions implicated in this case—21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of any food that is misbranded) and 21 U.S.C. § 343(a) (defining food as misbranded if its labeling is false or misleading in any particular manner)—the court held that "the appropriateness of the labeling of

beverages containing Aspartame and the use of Aspartame in aged soft drinks" should be referred to the FDA to "utilize the special expertise of the FDA . . . ."  *Id.* at 769-70.

The Seventh Circuit's decision in *United States v. an Article of Device Diapulse*, 650 F.2d 908 (7th Cir. 1981), is similarly instructive.  In *Diapulse*, the federal government brought an action to seize certain medical devices, arguing they were ineffective for the claims made in their labeling.  *Id.* at 909.  The court held that the legality of the labeling was for the FDA to determine and dismissed the case on primary jurisdiction grounds.  *Id.* at 910.  This Court should reach the same conclusion in this case and dismiss Plaintiff's claims.  This matter falls squarely within the FDA's authority and expertise, and referral is particularly appropriate given the FTC's traditional deference to the FDA in such matters.

### D.    PLAINTIFF'S CONSUMER FRAUD CLAIM FAILS FOR MULTIPLE ADDITIONAL REASONS.

Section 349 of New York General Business Law ("section 349") is a consumer protection statute intended to "provide needed authority" to address "false and deceptive business practices."  *Karlin v. IVF Am., Inc.*, 93 N.Y.2d, 282 (1999).  The statute was not intended to serve as a vehicle for testing novel legal theories or advancing Plaintiff's own public-policy goals.  To state a section 349 claim, a private plaintiff must allege each of three elements: "that (1) defendants engaged in conduct that is deceptive or misleading in a material way; (2) the deceptive conduct was 'consumer-oriented'; and (3) plaintiff[] [has] been injured 'by reason of' defendants' conduct."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 630 (S.D.N.Y. 2001).  Plaintiff cannot satisfy this test for multiple reasons and his section 349 claim must therefore be dismissed.

1.    Plaintiff Has Not Alleged Any Deceptive Act or Practice That Took Place in New York.

To maintain a private right of action under section 349, a claimant must allege deceptive acts or practices that took place *in New York*.  *See*, *e.g.*, *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 120 (S.D.N.Y. 2002) (holding that New Jersey resident could not state a section 349 claim as result of insurer's sale of individual disability insurance policies, absent allegation that practices being challenged as deceptive occurred within New York).  For example, in *Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 265-266 (S.D.N.Y. 2001), this Court held that non-New York residents could not state a section 349 claim against the defendant cruise company—despite allegations that the company solicited business in New York and made false representations to New York residents there—where the name plaintiffs were not residents of New York and did not allege that they either read allegedly false promotional material in New York or purchased their cruise tickets in that state.  Plaintiff's complaint is similarly defective and must be dismissed for the same reasons.  Just as in *Pettit*, the name plaintiff here is not a resident of New York.  *See Compl*. ¶ 5.  Plaintiff does not allege that he read, saw or heard any allegedly false "advertising, marketing, or promotion" in New York (or anywhere else, for that matter), nor that he purchased any Snapple beverages in New York.  *See Pettit*, 153 F. Supp. 2d at 265-66.  Plaintiff's nationwide class-action complaint must be dismissed for this reason alone.

2.    Plaintiff Has Not and Cannot Allege That Snapple Committed a Deceptive Act or Practice.

Under section 349, "[w]hether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Tiny Tot Sports, Inc. v. Sporty Baby, LLC*, No. 04 Civ. 4487, 2005 WL 2044944 (S.D.N.Y. Aug. 24, 2005); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330 (N.Y. 1999), *aff'd* 96 N.Y.2d 201 (N.Y. 2001).  The standard for whether an act or practice is misleading is an

objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's conduct.  *See Mintz v. Am. Tax Relief, LLC,* 837 N.Y.S. 841 (N.Y. Sup. Ct. 2001). Conclusory allegations are insufficient to state a claim under section 349.  *Moses v. Citicorp Mortg. Inc.*, 982 F. Supp. 897, 903 (E.D.N.Y. 1997).  Instead, "a plaintiff must allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim." *USAlliance Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 346 F. Supp. 2d 468, 472 (S.D.N.Y. 2004); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) ("Plaintiff is required to set forth specific details regarding the allegedly deceptive acts or practices.").  Plaintiff has not and cannot satisfy that threshold pleading standard here and that failure alone is fatal to his section 349 claim.

This Court has repeatedly dismissed section 349 claims where, as here, the pleading consists merely of "conclusory allegations" that are "not supported by specific and detailed factual allegations."  *See*, *e.g.*, *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 330-31 (S.D.N.Y. 2002); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434 (S.D.N.Y. 2004); *Weaver*, 172 F.R.D. at 100.  Nowhere does Plaintiff here mention a single piece of "advertising, marketing, or promotion" seen or heard by him (either on television, the radio or in a magazine) before he allegedly purchased (unspecified) Snapple beverages.  Nowhere does Plaintiff allege that such advertising, if any, was materially false or misleading.  Instead, Plaintiff makes broad, conclusory allegations about generic "advertising" (*see Compl.* ¶¶ 20-21) that only highlight the Complaint's total failure to allege that a single piece of such "advertising" was materially false or misleading.  Such pleading does not exist for good reason:  Rule 11 forbids it.

The one passing reference to an "advertisement" Plaintiff can muster is Snapple's website.  *See Compl.* ¶ 21.  But even there, Plaintiff says nothing about the website other than

merely asserting it exists.  He does not say the website constitutes an advertisement, nor that it contains a single word that is materially misleading.  Nor could he, as the website itself refutes any such claim.  Indeed, the website fully discloses the ingredients in Snapple's juice drinks, thereby informing any reasonable consumer of everything he or she needs to know before making a purchasing decision based on his or her own personal preferences.  *See*, *e.g.*, Ex. B (Snapple webpage).  Thus, the one "advertisement" Plaintiff mentions by name tells precisely the truth and exactly as the FDA requires.

Plaintiff's vague complaint that Snapple beverages "do not contain the fruit depicted" (*see Compl.* ¶¶ 2(b), 35, 40) is similarly flawed.  Plaintiff does not allege he purchased any specific Snapple product, much less that he heard or saw any specific piece of "advertising, marketing, or promotion" before making such a purchase.  In all events, as discussed above, FDA regulations expressly endorse Snapple's approach.  Moreover, the "mere depiction of fruit . . . is not a specific affirmative representation that the product contains those fruits."  *Gerber*, 439 F. Supp. 2d at 1116 (rejecting claim that graphics of oranges, peaches, strawberries, cherries, pineapple and other berries created confusion and misrepresented the contents of a product that contained only grape juice), *appeal docketed*, No. 06-55921 (9th Cir. June 30, 2006).

Plaintiff's section 349 claim must also fail because the labels themselves refute his claims.  In *Gerber*, the court dismissed on Rule 12(b)(6) grounds claims virtually identical to Plaintiff's here, holding that "no reasonable consumer upon review of the packaging as a whole would conclude" that the "Fruit Juice Snacks" at issue there "contain[ ] the juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified."  *See id.* (emphasis added).  Where, as here, "a consumer can readily and accurately determine the nutritional value and ingredients of a product," a consumer could not be

"deceived by depictions of fruit and fruit-like substances" in the marketing or advertising of the product into making an uninformed choice.  *See id*; *see also* Ex. A (label).  So too with Plaintiff's claims regarding high fructose corn syrup, which likewise plainly appears on the label in the ingredient list, just as the FDA's regulations require.  *See* Ex. A; 21 C.F.R. § 101.4(a).

Reasonable consumers will read the entirety of a label if they are concerned about a product's ingredients.  With respect to each "category" of Plaintiff's allegations, Snapple's labels tell the whole story, namely:  (i) that each beverage is sweetened by high fructose corn syrup, and (ii) that each acai-blackberry beverage contains pear juice and natural flavors.  As discussed above, this information is presented in the manner compliant with and dictated by federal labeling law.  Plaintiff's section 349 claim therefore fails as a matter of law.  *See Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 50 (2d Dep't 1999) ("Consumer fraud claims may not be predicated upon fully disclosed facts.").

3.     Plaintiff Has Not and Cannot Allege Any Actual Damages.

Even if Plaintiff could allege deceptive conduct by Snapple—which he cannot—his section 349 claims would fail on the second prong:  Under section 349, a plaintiff must plead specific facts showing that he suffered "actual injuries or damages."  *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000); *see also Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121 (1st Dep't 2002); *Goldberg v. Enter. Rent-A-Car Co.*, 14 A.D.3d 417, 417-418 (1st Dep't 2005) (finding that section 349 claims were properly dismissed for failure to allege any actual harm).

In a class action involving substantially similar allegations, *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77 (1st Dep't 2004), the court affirmed the dismissal of a section 349 claim for failure to satisfy the "actual injury" prong.  The plaintiffs complained that allegedly deceptive labels on herbal iced teas and fruit punch drinks—promising that consumption of the beverages would improve memory, reduce stress and improve overall

health—caused them to spend money, but receive no health benefits in return.  *Id.* at 78. However, the court found that because the plaintiffs never alleged that the cost of the beverages was inflated by the alleged misrepresentation or that their health was adversely affected by the beverages, they failed to demonstrate "actual injury," and instead tried to set up the deception as both the act and injury, which is impermissible under New York law.  *Id.*

It is well established under New York law that a plaintiff bringing a section 349 claim cannot rely on the defendant's alleged deceptive conduct to satisfy both the "deceptive act or practice" element and the "actual injury" element.  As the court in *Small v. Lorillard Tobacco Co. Inc.* explained, plaintiffs bringing claims under section 349 cannot "set[] forth deception as both act and injury."  94 N.Y.2d 43, 56 (N.Y. 1999).  In that case, the plaintiffs argued that deceptive commercial practices on the part of cigarette manufacturers prevented them from making "free and informed choices as consumers," and if they had known the truth about nicotine, "they never would have purchased" the cigarettes.  *Id.*  The plaintiffs in *Small* argued that their inability to make an informed purchasing decision due to the alleged deception by the manufacturers satisfied "actual injury" element under the statute.  The court rejected that argument, stating that the "[p]laintiffs' definition of injury is legally flawed."  *Id.*  Fatal to their 349 claim was the fact that the plaintiffs had failed to allege that the cost of cigarettes was affected by the alleged misrepresentation.  *Id.*  Moreover, the plaintiffs did not seek recovery for injury to their health as a result of addiction.  *Id.*  The relief sought by the plaintiffs was confined to monetary recoupment of the purchase price of the cigarettes.  *Id.*  As a result, the court held that the plaintiffs had failed to establish actual harm sufficient to allow recovery under section 349.  *See also DeRiso v. Synergy USA*, 6 A.D.3d 152 (1st Dep't 2004) (dismissing section 349 claim for impermissibly conflating the "deceptive act" and "actual injury" requirements).

Here, Plaintiff does not claim to have actually purchased, by name, *even one* of the more than two dozen Snapple beverages referenced in the Complaint—much less the beverages that are its focus, *i.e.*, acai blackberry and high fructose corn-sweetened beverages.  *A fortiori*, he has not and cannot allege any diminished value between the price he paid and the product he received.  Like the plaintiffs in *Small* and *Donahue*, Plaintiff has presented the alleged deception, *i.e.*, the alleged false advertising, as "both act and injury."  Thus, Plaintiff's section 349 claim is fatally flawed and must be dismissed.

Plaintiff's bare allegations that he and the class "have been damaged and suffered ascertainable loss" (*Compl.* ¶ 49) amount to nothing more than a "formulaic recitation of the elements of [the] cause of action," and "will not do."  *Twombly*, 127 S. Ct. at 1974.  In *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (2d Dep't 2002), the court found that plaintiffs had not alleged and could not prove any "actual injury" as required under section 349.  The court explained that mere conclusory allegations that the defendant's actions caused actual damages and injury in amounts to be determined were insufficient to meet the threshold under the statute.  *Id.*  Likewise here, Plaintiff's conclusory allegations do not come close to satisfying the actual injury or damage requirement and only underscore his inability to do so.

Plaintiff's allegations that he and the class "paid a premium for Snapple's beverages but received something less and different from what was promised and bargained for" (*Compl.* ¶ 43) fare no better.  Plaintiff does not allege that he purchased any specific Snapple product in New York or anywhere else, much less allege the price he paid for it.  Nor does Plaintiff allege that the price he paid was higher than competitors' products of the same size and type at the same retail location.  Plaintiff's claims ignore the basic fact that retailers, and not manufacturers such as Snapple, set prices.  Plaintiff's conclusory allegations thus do not come close to satisfying the

actual damages requirement because (among other reasons) they are based solely on his own subjective belief that Snapple beverages are too expensive in relation to the benefits offered. Plaintiff cannot satisfy the actual damages requirement for the simple reason that he could only reasonably have intended to purchase a beverage, and that is precisely what he received. Plaintiff's vague and conclusory allegations underscore that he has not and cannot satisfy the actual damages requirement and his section 349 claim must be dismissed for this reason alone

4.      Plaintiff Has Not and Cannot Allege Causality.

Even if Plaintiff could show unlawful conduct *and* actual damages, which he cannot, his section 349 claim still must be dismissed because he cannot show any causal nexus between the two.  *See Gale v. Int'l Bus. Mach. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) (affirming dismissal of section 349 claims for failure to show causation).  Although section 349 does not require Plaintiff to prove reliance, it does require him, on behalf of the putative class, to prove a causal relationship between an alleged act of consumer fraud and damages sustained thereby. *See id.*  Plaintiff has not, and cannot, do so here.

In *Gale*, the plaintiff cited allegedly misleading statements by IBM, but failed to state that he saw any of those statements before he purchased the product at issue.  9 A.D.3d at 447.  The court found that if the plaintiff had not seen any of those statements, the statements could not possibly have been the cause of his alleged injury.  *Id.*  That failure to show a connection between the alleged deceptive act and the injury was fatal to the plaintiff's section 349 claim.  If anything, Plaintiff's section 349 claim is even weaker than the one dismissed in *Gale*.  Plaintiff does not claim to have seen or heard even one specific instance of the Snapple "marketing, advertising, or promotion" about which he complains.  The conspicuous absence of any allegations concerning how Plaintiff specifically was deceived by Snapple's "marketing, advertising, and promotion" of its beverages is fatal to his claim.

The best Plaintiff can do is mention the mere existence of Snapple's website, but again, he does not allege that he visited the website before allegedly purchasing (unspecified) Snapple beverages, or that the website was an "advertisement," or that it contained anything "false" or "misleading."   Plaintiff thus fails to plead, and cannot prove, that he was in fact misled, deceived, induced or persuaded to purchase a Snapple beverage, thereby defeating causation (and his section 349 claim) as a matter of law. *See Twombly*, 127 S. Ct. at 1964.

### E.   THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Perhaps recognizing the weaknesses of his other theories of recovery, Plaintiff also asserts a claim of unjust enrichment.   As an initial matter, unjust enrichment is an equitable remedy unavailable where, as here, a plaintiff has an adequate legal remedy in damages. *Crigger v. Fahnestock and Co., Inc.*, No. 01 Civ. 07819 (JFK), 2003 WL 22170607, at *12 (S.D.N.Y. Sept. 18, 2003).   Moreover, Plaintiff cannot satisfy any requirement for unjust enrichment: (1) that the defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) that the circumstances are such that equity and good conscience require that the defendant make restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Universal Acupuncture Pain Serv., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002).

A claim for unjust enrichment "requires some type of direct dealing or actual, substantive relationship with a defendant." *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997) (dismissing unjust enrichment claim for plaintiff's failure to allege any direct dealings or substantive relationship with the defendant); *see also In re Motel 6 Sec. Litig*, No. 93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997) (same).   Here, Plaintiff has failed to allege any "direct dealing" or "actual, substantive relationship" with Snapple that would satisfy this requirement.   In addition,

the Complaint fails to allege that Plaintiff conferred any benefit upon Snapple that resulted in an unjust detriment to him or any member of the putative class.  Indeed, Plaintiff fails to plead any facts suggesting that Snapple accepted or retained any benefits under circumstances that would make it inequitable to retain them.  No amount of re-pleading can cure this fatal flaw.  Snapple could not have been enriched at Plaintiff's expense because he could only reasonably have intended to purchase a beverage, and that is precisely what he received.  Plaintiff's unjust enrichment claim thus fails for yet another reason.

### F.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTY.

Counts III and IV of the Complaint allege that Snapple breached express and implied warranties.  Neither claim can survive dismissal.  To state a claim for breach of the implied warranty of merchantability, Plaintiff must allege that he purchased a product that was not "fit for the ordinary purposes for which such goods are used."  *In re Canon Cameras Litig.*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (citing N.Y. U.C.C. § 2-314).  Plaintiff cannot satisfy this standard.

Plaintiff does not allege that he or any member of the putative class purchased any specific Snapple beverage, much less one that was otherwise unsuited for the ordinary uses for which beverages are sold.  Indeed, Plaintiff pleads no facts whatsoever indicating that the (unidentified) beverage he allegedly purchased fell short of the reasonable and ordinary expectations of consumers in any way.  Plaintiff does not allege that the beverage(s) he allegedly consumed was in any way unpalatable or that he suffered any immediate ill effects after he allegedly consumed the beverage.  The decision in *Donahue* is directly on point, where the court in a consumer class action against manufacturers of bottled soft drinks affirmed the dismissal of an implied warranty claim because the "merchantable beverages caused no ill effects and were fit

for their intended purpose, namely liquid refreshment." 13 A.D.3d at 79; *see also Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659 (2d Dep't 1989) (affirming dismissal of claim based on implied warranty of merchantability for failure to demonstrate that paneling "was defective or not fit for the purpose for which it was intended"); *Horowitz v. Sears, Roebuck and Co., Inc.*, 137 A.D.2d. 492 (2d Dep't 1988) (dismissing implied warranty of merchantability claim as "the merchant warrants only that the goods sold are fit for their ordinary purpose . . . [and] the appliances at issue were fit for their ordinary purposes of laundering clothing."). Similarly, here, Plaintiff cannot show that Snapple beverages were unfit for their ordinary purposes, and he therefore fails to state a claim for breach of implied warranty of merchantability.

Plaintiff's implied warranty claim fails for another reason:  lack of privity.  In non-personal injury actions, "under New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." *Hubbard v. General Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (citations and quotations omitted); *see also Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133 (GBD), 2004 WL 2793213, at *5 (S.D.N.Y. Dec. 6, 2004) (dismissing breach of implied warranty claims for failure to allege the existence of privity with defendant); *Kolle v. Mainship Corp.*, No. 04CV711 (TCP) (MLO), 2006 WL 1085067, at *6 (E.D.N.Y. Apr. 20, 2006) (stating that "where only economic loss is alleged, implied warranties do not run to remote purchasers").  Again, Plaintiff does not—and cannot—allege privity here.

Furthermore, Plaintiff's failure to provide Snapple of notice of his claim for breach of the implied warranty of merchantability is fatal to his claim.  Notice is a requirement under New York law for a breach of warranty claim. *See Bellevue South Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 298 (N.Y. 1991); *Hubbard*, 1996 WL 274018, at *4 (dismissing implied warranty

claim for failure to allege notice).  Plaintiff's Complaint lacks any allegation that he notified Snapple of any alleged breach of warranty.  Such a failure requires dismissal of the claim.

Plaintiff's express warranty claim fares no better.  Under New York's version of the Uniform Commercial Code, an "express warranty" is "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. § 2-313(1). Plaintiff has no cause of action under that statute, because he has failed to allege that any such "affirmation of facts," "promises," or "descriptions" were "part of the basis of the bargain."  And even if Plaintiff had made such allegations, he cannot show any breach because he has not alleged—and cannot show—that Snapple made any affirmations of fact to which its products did not conform.  *See Donahue*, 13 A.D. 3d at 79 (affirming dismissal of express warranty claim because the labels at issue contained no affirmation of fact or promise that the beverages offered any health benefits); *Ferracane v. United States*, No. 02-CV-1037 (SLT), 2007 WL 316570, at *8 (E.D.N.Y. Jan. 30, 2007) ("Absent evidence of some affirmation of fact, promise, description, sample or model, there is no basis for alleging a breach of an express warranty.").  Furthermore, as discussed above, the challenged statements are all truthful in context.  *See Gerber*, 439 F. Supp. 2d at 1118 (dismissing similar breach of express warranty and breach of implied warranty claims).  Either way, they are not actionable and Plaintiff's claim must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice, or alternatively without prejudice pursuant to the primary jurisdiction doctrine.

Respectfully submitted,


**BAKER BOTTS L.L.P.**

Dated:  November 6, 2007          /s/ Seth T. Taube          
                                  Seth T. Taube (ST 6088)
                                  Maureen P. Reid (MR 2326)
                                  30 Rockefeller Plaza
                                  New York, New York  10112
                                  Tel:    (212) 408-2500
                                  Fax:    (212) 408-2501

                                  Van H. Beckwith (to be admitted *pro hac vice*)
                                  Allyson N. Ho (to be admitted *pro hac vice*)
                                  Baker Botts, L.L.P.
                                  2001 Ross Avenue
                                  Dallas, Texas  75210
                                  Tel:    (214) 953-6500
                                  Fax:    (214) 953-6503

                                  *Attorneys for Defendant*